IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. NEWTON, | ) | CASE NO. 1:14 CV 763 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| DOMINION MANAGEMENT | ) | |
| SERVICES, EUCLID APARTMENTS, | ) | |
| | ) | |
| Defendant. | ) | |

*Pro se* plaintiff Charles D. Newton filed the above captioned action against his landlord, Dominium Management Services, Euclid Apartments ("Dominium").[1] In the complaint, plaintiff alleges Dominium breached his rental agreement contract by allowing undesirable tenants to move into other apartments in the building and then failing to evict them when they violated the terms of their leases. He seeks $ 2,000,000.00 in damages.

**Factual and Procedural Background**

Plaintiff entered into a lease agreement with Euclid Leased Housing Association I, dba Euclid Apartments on January 1, 2014. The agreement was a renewal of the lease of apartment #202B at 27660 Tungsten Rd., Euclid, Ohio 33132, which plaintiff occupied since 2005. Dominium is listed on the lease as the owner of the property (ECF No. 1-6 at 4). Pursuant to the terms of this

---

[1] While plaintiff lists the defendant as "Dominion Management Services," the business entity listed as the property owner on the lease is "Dominium Management Services." (ECF No. 1-6 at 4). The addendum to the lease is also printed on Dominium letterhead. (ECF No. 1-6 at 7).

lease, plaintiff is required to pay a total sum of $ 6,840.00 for the year, payable to the rental office at 27181 Euclid Avenue, Euclid, Ohio 44132 in monthly installments of $570.00. Plaintiff alleges that the terms of the lease required his landlord to comply with applicable building, housing, health, and safety codes and to keep all common areas of the premises safe and sanitary. Plaintiff was also required to sign an addendum in which he agreed that neither he nor his guests would use or sell illegal drugs from the premises. That addendum specified that a single violation could be considered good cause for termination of the lease and unless otherwise provided by law, a criminal conviction would not be required to prove that a violation occurred.

Plaintiff's apartment is on the second floor of a two story, eight unit building. Four of the apartments are on the first floor and four of the apartments are on the second floor. The laundry room is located on the second floor near plaintiff's apartment. He does not give any indication of whether all of the apartments in his building are rented and occupied.

In November 2013, two months before he entered into his current lease, new tenants moved into apartments 101B and 201B. He claims these tenants have overcrowded parties, conduct loud conversations in the hallways and the laundry room, loiter in the common areas, slam doors, run up and down the stairs, and behave rudely. He also complains that the smell of marijuana frequently permeates the common areas.

Plaintiff alleges that in mid-December 2013, the rear exit door to the building was damaged preventing it from closing properly. He reported the damage to the Euclid Leasing Office on December 21, 2013. He states it took management a week to properly repair the door. He contends that after the door was repaired, the other residents of the building used various objects to prop the door open. Plaintiff sent an email to the Euclid Leasing Office and to Dominium as the

owner of the property informing them of the situation and suggesting that this action was taken to facilitate illegal drug activities. He claims the landlord took no action to evict the tenants Plaintiff believed to be the offenders. Plaintiff began recording conversations taking place in the hallways and the common areas. He scheduled a meeting with the property manager to play these audio recordings and discuss his concerns about safety. He states the property manager listened to his concerns but did not promise to initiate eviction proceedings for the tenants in apartments 101B and 201B.

Plaintiff called the on-site security provider, Precision Security, to report loud arguing and fighting in the outdoor common areas. A security officer responded and informed plaintiff he had dispersed an argument occurring between the tenants or guests in apartments 101B and 201B. He advised plaintiff to call again if the dispute continued. Approximately an hour later, plaintiff again called Precision Security to report a fight in the outdoor common areas. He claims he heard from within his apartment one of the participants threaten retaliation with a firearm. Either plaintiff or Precision Security called Euclid police who responded with weapons drawn. These officers searched the subjects and the surrounding area but did not find any firearms. Plaintiff contends he was afraid to leave his apartment while the fight was occurring.

Plaintiff claims his recorded conversations support his suspicion that the residents or guests of apartments 101B and 201B are using and selling illegal drugs in their units. He provided excerpts of those conversations to the property manager.

Plaintiff called Precision Security concerning a male smoking marijuana in the hallway on March 20, 2014 and recorded the conversation between the security officer and an unidentified male in apartment 201B. He contends the security officer saw a male run into apartment

201B when he approached. The officer knocked on the door and confronted the occupants. He told them there had been numerous complaints and the leaseholder could be evicted if this behavior continued.

Despite plaintiff's numerous reports to management about the tenants in apartments 101B and 201B, he alleges they have not yet been evicted by the management company or by Dominium. He claims Dominium's failure to evict these tenants for violation of the drug usage portion of their leases constitutes a breach of his lease contract. He contends he entitled to damages in the amount of $ 2,000,000.00 which he calculates as the total value of the lease plus damages for pain and suffering and emotional anguish.

Dominium filed a motion to dismiss the complaint pursuant to Federal Civil Rule 12(b)(1). In the motion, Dominium contends this court lacks subject matter jurisdiction over this case. The defendant notes there is no federal question stated in the complaint and therefore federal jurisdiction must be based on diversity of citizenship. They argue that plaintiff fails to establish damages which in good faith can rise to the level of the jurisdictional amount specified in 28 U.S.C. § 1332. For the reasons set forth below, the motion to dismiss (ECF No. 8) is **granted** and this action is dismissed.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed.R.Civ.P. 12(b)(1). Generally, Fed.R.Civ.P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.1994). A facial attack challenges the sufficiency of the pleading itself. In contrast, a factual attack challenges the factual

existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D. Ohio.1997). The importance of this distinction has to do with the nature of the court's consideration of the facts and allegations presented in connection with the Rule 12(b)(1) motion. If the motion presents a facial attack, the court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Conversely, if the motion presents a factual attack, then the court is free to consider extrinsic evidence and may weigh the evidence of its own jurisdiction without affording the plaintiff the presumption of truthfulness. *Ritchie*, 15 F.3d at 598; *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *see also Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir. 2005). Nevertheless, where subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers*, 798 F.2d at 915.

In addition, federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990) and may not entertain an action over which jurisdiction is lacking. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by the Court on its own motion at any stage of the proceedings. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539-40 (6th Cir. 2006); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988).

### Discussion

Federal courts are courts of limited jurisdiction and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549

F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377(1994) (internal citation omitted).

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the plaintiff must establish that he is a citizen of one state and all of the defendants are citizens of other states. The second type of federal jurisdiction relies on the presence of a federal question. This type of jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Plaintiff does not raise a federal question in his complaint, and therefore, if federal jurisdiction exists in this case, it must be based on diversity jurisdiction. To meet his burden of establishing federal jurisdiction based on diversity of citizenship, plaintiff must: (1) state all parties' citizenships such that the existence of complete diversity can be confirmed; and (2) must establish that the damages for the claim, in good faith, exceed $ 75,000.00. 28 U.S.C. § 1332(a)(1); *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir.2000); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072

(6th Cir.1990). Plaintiff has not established either of these criteria.

As an initial matter, plaintiff does not state sufficient allegations to establish diversity of citizenship. The citizenship of a natural person is his domicile. *Von Dunser*, 915 F.2d at 1072. Plaintiff indicates he has lived in Ohio since at least 2005 and his citizenship would therefore be Ohio. Dominium is not a natural person. It is a business entity. The type of business entity is not clear from the complaint or the Defendant's motion to dismiss. If Dominium is a corporation, it is deemed by statute to have the citizenship of its state of incorporation *and* its principal place of business. 28 U.S.C. § 1332(c)(1). If it is an unincorporated entity such as a partnership or a limited liability company, it has the citizenship of each partner or member. *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Moreover, "because a member of a limited liability company may itself have multiple members or may be a corporation—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." *Id.*; *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010). Plaintiff has provided no information about Dominium to suggest its citizenship. While plaintiff lists a mailing address for Dominium, he does not indicate whether Dominium is a corporation, a limited liability company, or a partnership and does not provide information necessary to establish its citizenship for that type of business entity. Because plaintiff is bringing this action, he has the burden of establishing complete diversity of citizenship. Providing a mailing address for a business entity does not meet that burden.

In addition, plaintiff fails to establish the jurisdictional amount in controversy to establish federal diversity jurisdiction. Generally, the amount in controversy alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the

jurisdictional amount. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir.1990). When determining whether the amount in controversy required for diversity jurisdiction has been satisfied, the complaint is examined at the time it was filed. *Id.*

Plaintiff's only cause of action is one for breach of contract and he lists his damages as $2,000,000.00. In this instance, plaintiff claims the landlord breached his lease contract by failing to evict other tenants. In Ohio, a covenant of quiet enjoyment is implied in every lease contract for realty. *Cincinnati Ins. Co. v. Evans*, No. WD-09-012, 2010 WL 2334795, *8 (Ohio App. 6 Dist. June 11, 2010). A covenant of quiet and peaceful enjoyment is breached when the landlord substantially interferes with the beneficial use of the premises by the tenant. *Id.*

Damages awarded for a breach of a covenant of quiet enjoyment should fully and adequately compensate the tenant for the losses he has sustained. *Id.* The Ohio Courts have allowed a tenant whose covenant has been breached to recover all rent paid during the period when a landlord's action has taken away a part of the privileges leased to him. *Id. See Frankel v. Steman*, 92 Ohio St. 197, 200 (1915); *Howard v. Simon*, 18 Ohio App.3d 14, 16 (1984). Later cases, however, have measured damages more conservatively, awarding the difference between the rent paid and the actual value received. *See Cincinnati Ins. Co. v. Evans*, No. WD-09-012, 2010 WL 2334795, *8 (Ohio App. 6 Dist. June 11, 2010); *Allen v. Lee*, 43 Ohio App.3d 31, 33-35 (1987). Assuming plaintiff can establish that the landlord's actions substantially interfered with his use of the premises, the maximum amount of damages he could collect from the defendant would be the amount of rent paid under the lease. Because jurisdiction must be established as of the date of the filing of the complaint, the most plaintiff would be entitled to collect would be the amount of rent paid from the effective date of the lease to the date he filed this complaint, January 2014 through

April 2014. He pays $570.00 per month in rent, bringing the total amount of rent he paid for January through April to $2,280.00. If the more conservative approach is applied, he could only collect the difference between the amount he paid in rent for those four months and the actual value he received. Even if plaintiff could somehow prove he was entitled to the full value of the lease, his damages would only be $ 6,840.00. While it is possible plaintiff could incur additional damages in the future if he decides to vacate his current apartment, he did not incur those damages as of the date he filed this action. His damages are far below the $ 75,000.00 jurisdictional level.

Plaintiff also claimed compensatory damage for emotional distress he claims suffered from living in the leased property. Of the $ 2,000,000.00 he requests in damages, at least $ 1,993,160.00 is attributable to compensate his alleged mental anguish. A plaintiff, however, cannot recover damages for emotional distress from a breach of contract, "unless the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Allen*, 43 Ohio App.3d at 34. A residential lease lacks that special emotional significance. *Id.* Furthermore, these are compensatory damages intended to compensate plaintiff for his loss, not to punish the defendant. Although the court does not intend to diminish the stress and aggravation bad neighbors can cause, plaintiff does not provide any objective basis for the nearly 300% increase in the amount of damages from that which he could collect under the lease. He does not allege with any specificity the types of emotional injuries he suffered that would justify such a substantial award that goes well beyond the actual value of the lease.

Plaintiff cannot account for the substantial difference between the value of the leased property and the requested award of damages by claiming he is seeking punitive damages. Punitive damages are not recoverable in an action for breach of contract under Ohio law. *Digital & Analog*

*Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36, 45-46 (1989). These damages are recoverable for certain intentional torts, but not for the breach of the contract. The tort claim, however, must be accompanied by aggravating circumstances of wanton, reckless, malicious, or oppressive conduct. *See Saberton v. Greenwald*, 146 Ohio St. 414, 426 (1946); *Carrera v. Sandman*, 65 Ohio App.3d 422, 426 (1989); *R & H Trucking Inc. v. Occidental Fire & Cas. Co.*, 2 Ohio App.3d 269, 272 (1981). Plaintiff does not give any indication that he is asserting an independent intentional tort against Dominium, nor is any such tort apparent on the face of the complaint. Furthermore, plaintiff has not alleged any facts to suggest Dominium, a corporation, exhibited wanton, reckless, malicious or oppressive conduct toward plaintiff in failing to immediately evict two of his neighbors based on plaintiff's reports to the lease agent of conduct he believed to violate the terms of their lease agreement. Plaintiff cannot collect punitive damages for his claim of breach of contract.

Giving a generous reading to the complaint, it is plausible plaintiff could claim damages as high as $ 6,840.00. He cannot in good faith claim $ 2,000,000.00 in damages. Consequently, plaintiff has not established the jurisdictional amount in controversy needed to invoke federal diversity of citizenship jurisdiction.

### Conclusion

Accordingly, defendant's motion to dismiss (ECF No. 8) is granted this action is dismissed for lack of subject matter jurisdiction. All other pending motions (ECF Nos. 10, 12, and 14) are denied as moot. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

---

[2] 28 U.S.C. § 1915(a)(3) provides:

(continued...)

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: *August 29, 2014*

---

[2](...continued)
  An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

-11-